## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

IN RE:

DANA SMITH,

       Debtor(s).

Chapter 13

Case No.  24-60108

### OPINION

This matter is before the Court on the Trustee's Objection to Confirmation of Debtor's Second Amended Plan. This case raises the issue of what payments by a non-filing spouse are excludable from current monthly income under 11 U.S.C. § 101(10A)(B). Specifically, the Chapter 13 Trustee objects to the exclusion of payments made by the non-filing spouse toward a debt relief program. The exclusion affects the calculation of disposable income and the applicable commitment period.

### FACTS

Dana Smith ("Debtor") filed her Chapter 13 Voluntary Petition on July 21, 2024, as a married individual in her name alone. Together with her Petition, Debtor filed her Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period (Form 122C-1), which calculates current monthly income for purposes of determining the plan's commitment period and the Debtor's disposable income. The Debtor reports an average monthly income for her and her spouse of $10,370.65 ($124,447.80 annually), which is above the median family income in Illinois for a household of three.

However, the Debtor calculated a marital adjustment in the amount of $2,051.89 on Line 13 of Form 122C-1, by specifying $665.00 for "Husband's National Debt Relief Program Started on Jan 2024 for 4 years" (the "debt relief program"), along with tax deductions from the non-filing spouse's paycheck. The marital adjustment reduces the average monthly income to $8,318.76

1

($99,825.12 annually), which is an amount below the same Illinois median income threshold. As a result, disposable income is not calculated under 11 U.S.C. § 1325(b)(3), and the applicable commitment period is three years instead of five.

On January 15, 2025, the Trustee objected to the Second Amended Plan, asserting that the marital adjustment, specifically the $665.00 payment for the debt relief program, does not qualify to be listed on Line 13 of Form 122C-1. A hearing on confirmation was conducted on March 12, 2025, where a briefing schedule was established.

The facts surrounding the debt relief program are not in dispute. The Debtor's non-filing spouse enrolled in a 45-month debt consolidation plan with Gimteid Law, beginning January 9, 2024. The plan covers five separate debts in the husband's name only. The accounts are not open, and the husband has not been able to make new charges on the accounts since at least January 2024. The Debtor stipulates that when the debts were originally incurred by the husband, the money from the loans was used for the general household expenses of the husband, the Debtor, and their dependent.

## DISCUSSION

Section 1325 of the Bankruptcy Code governs confirmation of a Chapter 13 plan. Section 1325(b) sets forth the requirements for Chapter 13 plan payments when the plan does not propose full repayment of unsecured claims and either a trustee or an unsecured creditor objects to the plan's confirmation.[1] To confirm the plan over the Chapter 13 trustee's objection, the

---

[1]Section 1325(b) provides:

   (b)(1) If the trustee or the holder of an allowed unsecured claim object to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—…
      (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B).

Debtor must pay all "projected disposable income to be received in the applicable commitment period" to unsecured creditors. 11 U.S.C. § 1325(b)(1)(B).

Section 1325(b)(2) defines "disposable income" as "current monthly income received by the debtor… less amounts reasonably necessary to be expended… for the maintenance or support of the debtor or a dependent of the debtor…" 11 U.S.C. § 1325(b)(2)(A)(i).

Current Monthly income is specifically defined in the Bankruptcy Code as "average monthly income from all sources that the debtor receives" derived during the six months prior to the petition date. 11 U.S.C. § 101(10A)(A). Current Monthly income includes "any amount paid by any entity other than the debtor …on a regular basis for the household expenses of the debtor or the debtor's dependents…"  11 U.S.C. § 101(10A)(B)(i). In other words, current monthly income includes amounts regularly paid by a non-filing spouse, for household expenses of the debtor and the debtor's dependents.

Form 122C-1, entitled "Chapter 13 Statement of Your Current Monthly Income and calculation of Commitment Period" (the "Form") implements the language of 11 U.S.C. § 101(10A)(B)(i) by allowing a married debtor that files without their spouse to utilize a "marital adjustment." After calculating the total average monthly income in Part 1 of the Form,[2] the debtor proceeds to Part 2, which determines how to measure deductions from income. Line 13 of the Form allows for marital adjustments, which in turn reduces currently monthly income, allowing debtors to assess whether Section 1325(b)(3) should be applied in calculating disposable income. The Form instructs the debtor to include amounts "NOT regularly paid for the household expenses of you or your dependents…" Bankruptcy Form 122C-1, Line 13. That

---

[2] The average monthly income listed in Part 1 of Form 122C-1 is not in dispute.

amount represents the marital adjustment, which, when applied, lowers the debtor's current monthly income. This can affect how the debtor calculates disposable income.

In Part 3, the debtor is instructed to deduct the marital adjustment on Line 19 for purposes of determining the applicable commitment period under 11 U.S.C. § 1325(b)(4).  Section 1325(b)(4) states in pertinent part:

> (4) For purposes of this subsection, the 'applicable commitment period'–
> (A) subject to subparagraph (B), shall be—
>> (i) 3 years; or
>> (ii) not less than 5 years, if the current monthly income of the debtor and
> the debtor's spouse combined, when multiplied by 12, is not less than—…
>
>>> (II) in the case of a debtor in a household of 2, 3, or 4 individuals,
>>> the highest median family income of the applicable State for a family of
>>> the same number or fewer individuals;…

11 U.S.C. § 1325 (b)(4).

The allowance of the marital adjustment plays a critical role in this case, as it determines the Debtor's disposable income calculation and applicable commitment period. The Debtor has claimed a $2,051.89 marital deduction on Line 13 of Form 122C-1, resulting in average monthly income of $8,318.76, which is an amount below the Illinois median income threshold for purposes of calculating disposable income. Additionally, the Debtor has claimed the same marital deduction on Line 19, resulting in current monthly income, that when multiplied by 12 is less than the median family income in this state, and her applicable commitment period is 3 years. If it is determined that the Debtor cannot utilize the marital deduction, her current monthly income is such that she will be an above-median Debtor with a commitment period of five years and Section 1325(b)(3) should be applied in calculating disposable income.

In interpreting a provision of the Bankruptcy Code, the Court's analysis must begin with the plain language of the statute. *Ransom v. FIA Card Servs., N.A.,* 562 U.S. 61, 69 (2011). The

language at issue here is from 11 U.S.C.A. § 101(10A), which specifies that current monthly income includes "any amount paid by any entity other than the debtor…on a regular basis for the household expenses of the debtor or the debtor's dependents…" 11 U.S.C. § 101(10A)(B)(i). Therefore, the non-filing spouse's income must be included only to the extent it constitutes the debtor's income within the scope of 11 U.S.C. § 101(10A)— the amount regularly paid for the household expenses of the debtor or the debtor's dependents.

In short, if the non-filing spouse's payment to the debt relief program is not considered a "household expense," the payment may be excluded from the Debtor's current monthly income. For the reasons set forth below, the Court concludes that these payments do not constitute an "amount paid... on a regular basis for the household expenses of the debtor or the debtor's dependents" within the meaning of § 101(10A)(B). Accordingly, they are excludable from current monthly income as a marital deduction, and the Trustee's objection is overruled.

Section 101(10A) is written in the present tense, defining current monthly income in terms of income paid "on a regular basis for the household expenses of the debtor or the debtor's dependents." 11 U.S.C. § 101(10A)(B)(i). The inquiry is not whether the debt was originally incurred for the benefit of the household, but whether the current monthly payment regularly provides support to the debtor or dependents. Here, the credit card accounts have been closed since 2024, and the monthly payment is applied solely toward repayment of a past obligation owed exclusively by the non-filing spouse. The Debtor receives no current support from payment of this obligation, and were the non-filing spouse to cease making the payment, the Debtor's standard of living would be the same. No current household expense is being paid as a result of the non-filing spouse paying this debt.

Focusing more specifically on the statutory language, when a term is not explicitly defined, the Court should interpret it according to its ordinary and customary meaning. *Smith v. United States,* 508 U.S. 223, 228 (1993). The phrase "on a regular basis," as used in 11 U.S.C. § 101(10A)(B)(i), is not defined by the Bankruptcy Code. However, the phrase "on a regular basis" is ordinarily understood to mean ongoing and recurring, rather than referring to payments made on past due debts. Accordingly, payments towards a prior debt do not constitute a forward-looking contribution toward household expenses.

The Trustee contends the Debtor improperly deducted the debt relief program payment in the marital deduction section of Form 122C-1. He asserts that because the original debts were incurred for household expenses, the payments necessarily constitute "household expenses" and cannot be deducted from current monthly income. According to the Trustee's calculation, the Debtor's current monthly income exceeds the median, thereby requiring that her disposable income be determined pursuant to the means test standards set forth in § 1325(b)(3), rather than under the standards of § 1325(b)(2). The Debtor does not dispute that the *original* expenditures comprising the debt relief program were for household expenses. The Trustee argues that these expenses may not now be reclassified as eligible for the marital adjustment upon the restructuring of the debt into a debt settlement plan.

There is a split in authority regarding the proper interpretation of what constitutes payments made on a regular basis for a household expense of the debtor or debtor's dependents. *In re Carlyle,* No. 12-11923, 2013 WL 3777096, at *3 (Bankr. S.D. Ga. July 17, 2013) (citing *In re Toxvard,* 485 B.R. 423, 436 (Bankr. D. Colo. 2013)). One line of cases follows a "benefit of the debtor" approach, holding that payments made by a non-filing spouse that provide some benefit to the debtor cannot be deducted through the marital adjustment. *Id; See also In re Vollen*, 426

B.R. 359 (Bankr. D. Kan. 2010). In contrast, the other line of cases applies a "debtor-centric" approach, allowing such payments to be deducted if they are the non-debtor spouse's individual expenses, even if the debtor receives an indirect benefit. *Id; See In re Toxvard,* 485 B.R. at 437*; In re Shahan,* 367 B.R. 732 (Bankr. D. Kan. 2007)*.*

The Trustee cites to *In re Vollen*, 426 B.R. 359 (Bankr. D. Kan. 2010), as support for his position that the debt relief program payment may not be deducted from current monthly income. In *Vollen*, the court applied the "benefit of the debtor" approach. There, the issue was whether the debtor could claim a marital adjustment for loan payments made by the non-filing spouse on a personal loan and a car loan for which the non-filing spouse was solely liable. *Id.* at 363-364. After examining the non-filing spouse's credit card statements—paid off using proceeds from the loans—the court determined that the majority of the charges were for items such as food, clothing, and other personal or incidental expenses, all of which qualified as household expenses. *Id.* at 373. The court specifically identified expenses like the daughter's clothing, the non-filing spouse's workday lunches, and repayments on a personal loan used for car repairs and credit card refinancing as household expenses. *Id.*at 373-374. As a result, the debtor was not permitted to deduct these amounts as part of the marital adjustment. *Id.* at 374.

The instant case is governed by the principles articulated in *Hamilton v. Lanning*, unlike in *Vollen*, where the court did not yet have the benefit of that guidance. *Hamilton v. Lanning*, 560 U.S. 505 (2010). In *Lanning*, the Supreme Court adopted a "forward-looking approach" to the calculation of projected disposable income under § 1325(b), holding that a debtor's projected disposable income is based on their current disposable income, with adjustments to account for reasonably anticipated changes. *Id.* at 514–15. In reaching its decision, this Court remains mindful of *Lanning*'s forward-looking interpretation, and accordingly concludes that the

7

obligation at issue—stemming from the non-filing spouse's past indebtedness—cannot be treated as a current or forward-looking household expense of the debtor.

In contrast to the "benefit of the debtor" approach utilized in *Vollen*, the *Toxvard* decision advanced by the Debtor, takes the "debtor-centric" approach. *In re Toxvard,* 485 B.R. 423 (Bankr. D. Colo. 2013). There, the court permitted a debtor to exclude the non-filing spouse's mortgage payment from current monthly income because the debtor had no legal or equitable interest in those obligations, even though she resided in the home. *Id*. at 436-437.  In doing so, the court first assessed whether the household expense was solely the debtor's responsibility. *Id.* at 436. If so, the full amount paid by the non-filing spouse had to be included in the debtor's disposable income. *Id.* Conversely, if the expense was solely the obligation of the non-filing spouse, the debtor was entitled to deduct the full amount as a marital adjustment. *Id.* For jointly shared expenses, the debtor could only deduct the portion of the payment that exceeded her share of the obligation. *Id.*

In the instant case, there is no dispute that the obligation in question belongs solely to the non-filing spouse. The debt relief program is exclusively in the non-filing spouse's name and pertains to five separate debts incurred solely by the husband. Further, the payment is not being applied toward any ongoing expense that benefits the Debtor. These funds are not used to provide food, clothing, housing, insurance, transportation, or any other necessity or service from which the Debtor derives an ongoing benefit. Rather, the funds are exclusively used to satisfy unsecured debts for which only the non-filing spouse is legally obligated. If these payments were not made, the Debtor's standard of living would not diminish; to the contrary, the funds would become available to support the Debtor or her dependent's needs.

The *Toxvard* Court based its decision, in part, on the reasoning adopted in *In re Shahan*, which likewise applied the "debtor centric" approach. *Id*. at 436-437; *See In re Shahan,* 367 B.R. 732, 738 (Bankr. D. Kan. 2007). In *Shahan*, the Bankruptcy Court permitted a married debtor to claim a marital adjustment for mortgage and automobile payments made by the debtor's non-filing spouse on property the spouse had acquired prior to the marriage, solely owned, and for which the spouse remained individually liable throughout the marriage. *Shahan,* 367 B.R. at 738. In so holding, the court observed that although both the residence and the vehicle were "undoubtedly a part of [the debtor's] household," they nevertheless did not constitute the debtor's expenses. *Id.*

> To reach another conclusion would dictate that a spouse who does not file with her husband is actually worse off than a spouse who does. Under the Trustee's theory, [the debtor] would be required to contribute less of her income had she filed a joint case with [the non-filing spouse], even though she appears to have no need for bankruptcy relief and [the non-filing spouse] is solely liable on the debts listed in this case. If the aim of BAPCPA was to reduce bankruptcy filings, this can hardly be what the Congress had in mind.

*Id.*

If the Trustee's position were adopted, the Debtor would be penalized for her spouse's decision to satisfy his own debts. The result would be a distorted calculation of current monthly income that artificially inflates the Debtor's disposable income, forcing her into a five-year plan despite the fact that she does not benefit from the husband's debt relief payments.

The remaining cases cited by the Trustee are unpersuasive and are distinguishable from the case at bar. The Trustee cites to *In re Henderson*, 2024 WL 322170 (Bankr. N.D. Ga. Jan. 25, 2024), where the Court found that payments on the non-filing spouse's credit card could not be deducted as a marital adjustment. Notably, in *Henderson*, the non-filing spouse had thirteen open credit card accounts that were being used for current household expenses, such as food, her children's sporting events, travel, clothing, and the parties' cell phone bill. *Id.* at *2-3. Whereas

in the instant case, the credit card accounts have been closed since January 2024, and are not being used for any ongoing regular household expenses whatsoever. Similarly, the Trustee relies on *In re Pennington,* 2013 WL 1176235, at *2 (Bankr. S.D. Tex. Mar. 21, 2013), which also involved *open* credit card accounts that were *actively* being used for household expenses (emphasis added). Again, this is distinguishable from the case at bar, which involves payment of a past debt.

To interpret Section 101(10A)(B) as requiring inclusion of all historical household debt, regardless of whether they currently benefit the Debtor, would effectively collapse the distinction between "expenses" and debt payments that courts have recognized. "At least one court has pointed out that 'expenses' for purposes of § 101(10A)(B) does not include payments on debts because the language of § 707(b)(2)(A)[3] specifically distinguishes 'expenses' from 'payments on debts.'" *In re Baker*, 580 B.R. 662, 667 (Bankr. E.D. Va. 2017) (citing *In re Hall,* 559 B.R. 463 (Bankr. S.D. Tex. 2016) ("§ 707(b)(2)(A)(ii) is unequivocal that monthly expenses of the debtor shall not include any payments for debts")). In *Baker*, the Court held that monthly mortgage payments made by the debtor's non-filing spouse were not a "household expense" and were properly excluded from the debtor's current monthly income. *Baker*, 580 B.R. at 671. In doing so, the court adopted the rationale that "payments toward debts are not expenses as contemplated by § 101(10A)." *Id*. at 668.

---

[3] Section 707(b)(2)(A) provides in relevant part:

> (I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent… *Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts.*

11 U.S.C. § 707(b)(2)(A) (emphasis added).

This Court adopts that rationale in the present case, concluding that the non-filing spouse's monthly payments to a debt relief program do not constitute "household expenses" within the meaning of the statute. Rather, the payments are directed toward satisfaction of five distinct unsecured debts incurred solely by the non-filing spouse, who enrolled in a debt relief program held exclusively in his name. These payments represent the servicing of past, personal financial obligations of the non-filing spouse, not ongoing expenses necessary for the maintenance or support of the household or the Debtor.

For the reasons set forth herein, the Court concludes that the $665.00 monthly payment made by the Debtor's non-filing spouse toward his debt relief program is not a "household expense" as defined by 11 U.S.C. § 101(10A). Accordingly, the marital deduction is allowable, and the Court finds that the Second Amended Plan pays all "projected disposable income to be received in the applicable commitment period" to unsecured creditors, in accordance with 11 U.S.C. § 1325(b)(1)(B). A separate order shall enter.

ENTERED: September 30, 2025

/s/ Laura K. Grandy
_____
UNITED STATES BANKRUPTCY JUDGE